UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| MATTHEW BELARDINELLI, NORMAN DYMBORT, AMY BERWALD GASPARI, JEANINE FENTON, ARTHUR KRAKOWSKI, LESLIE LINSNER, CHARESE MCNEILL, and STEVEN SPECTOR, | : : : : : : : : : | Case No.:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | : : |  |
| - against - | : : |  |
| CONCEPTS IN STAFFING, INC., ARTHUR ABRAMS, and MONA ABRAMS, | : : : : |  |
| Defendants. | : : |  |

------------------------------------------------------------------------- x

Plaintiffs Matthew Belardinelli ("Belardinelli"), Norman Dymbort ("Dymbort"), Amy Berwald Gaspari ("Gaspari"), Jeanine Fenton ("Fenton"), Arthur Krakowski ("Krakowski"), Leslie Linsner ("Linsner"), Charese McNeill ("McNeill"), and Steven Spector ("Spector") (collectively, "Plaintiffs"), by and through their attorneys, Tannenbaum Helpern Syracuse & Hirschtritt LLP, as and for their complaint (the "Complaint") against Concepts in Staffing, Inc. ("CIS"), Arthur Abrams, and Mona Abrams (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to remedy, among other things, Defendants' willful failure to pay Plaintiffs the statutorily required minimum wage and overtime compensation in violation of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"), Article 19 § 650 *et seq.*, and to remedy Defendants' willful failure to pay wages earned by and owed to Plaintiffs in violation of the NYLL, Article 6 § 190 *et*

*seq.* Plaintiffs seek, among other things, unpaid earned wages, unpaid minimum wages, unpaid overtime, spread-of-hours pay, liquidated damages, statutory penalties, attorneys' fees, interest, and other appropriate relief pursuant to the FLSA and NYLL.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, this action being brought under the FLSA, 29 U.S.C. § 216(b).

3.      In addition, this Court has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts and otherwise form part of the same case or controversy.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants' wrongful acts and omissions that are the subject of this litigation occurred, in whole or in substantial part, in this District, and because CIS at all times relevant hereto had a principal place of business in this District (and the other Defendants are, upon information and belief, residents of the State of New York).

## PARTIES

**The Plaintiffs**

5.      Plaintiff Belardinelli is a natural person residing in Kings County, New York.

6.      Plaintiff Dymbort is a natural person residing in Monmouth County, New Jersey.

7.      Plaintiff Gaspari is a natural person residing in New York County, New York.

8.      Plaintiff Fenton is a natural person residing in New York County, New York.

9.      Plaintiff Krakowski is a natural person residing in Westchester County, New York.

10.     Plaintiff Linsner is a natural person residing in Nassau County, New York.

11.     Plaintiff McNeill is a natural person residing in Queens County, New York.

12.     Plaintiff Spector is a natural person residing in Westchester County, New York.

13.     At all times relevant, the Plaintiffs were engaged in interstate commerce.

14.     At all times relevant, the Plaintiffs were employees of the Defendants within the meaning of the FLSA and NYLL.

15.     At all times relevant, the Plaintiffs were non-exempt employees entitled by law receive to the minimum wage, overtime compensation, spread of hours pay, and the other protections of the FLSA and NYLL.

**The Defendants**

16.     Defendant CIS is New York corporation, which at all times relevant hereto had an principal place of business located at 9 E. 37th Street, New York, New York 10016, or, on and after October 2013, at 254 W. 31st Street, New York, New York 10001.

17.     According to its website (http://www.cisny.com/), CIS has for over 20 years operated as a permanent placement and staffing firm, "matching qualified, talented individuals to America's leading technology employers." Among other things, CIS's clients hire CIS to locate, recruit, and place permanent and temporary employees or consultants on behalf of such clients.

18.     At all relevant times CIS was the Plaintiffs' employer within the meaning of the FLSA and NYLL.

19.     Upon information and belief, Defendant Arthur Abrams is a natural person residing in Manhasset, Nassau County, New York. Arthur Abrams is the President of CIS.

20.     At all relevant times Arthur Abrams: (i) had the power to make hiring and firing decisions with respect to Plaintiffs' employment; (ii) had the power to make decisions affecting the Plaintiffs' compensation; (iii) supervised and controlled the Plaintiffs' work; and (iv)

maintained employment records in respect of the Plaintiffs.

21.     Arthur Abrams himself was also the Plaintiffs' employer within the meaning of the FLSA and NYLL.

22.     Upon information and belief, Defendant Mona Abrams is a natural person residing in Manhasset, Nassau County, New York. Mona Abrams is the founder, owner, and Chief Executive Officer of CIS.

23.     At all relevant times Mona Abrams: (i) had the power to make hiring and firing decisions with respect to Plaintiffs' employment; (ii) had the power to make decisions affecting the Plaintiffs' compensation; (iii) supervised and controlled the Plaintiffs' work; and (iv) maintained employment records in respect of the Plaintiffs.

24.     Mona Abrams herself was also the Plaintiffs' employer with the meaning of the FLSA and NYLL.

25.     At all relevant times Defendants were employers engaged in interstate commence within the meaning of the FLSA.

26.     At all relevant times, upon information and belief, the Defendants had annual gross operating revenues in excess of $500,000.

## FACTS

**Allegations Common to All Plaintiffs**

27.     All of the Plaintiffs were commissioned recruiters and/or salespersons employed by the Defendants. Specifically, Plaintiffs were responsible to, among other things, locate, recruit, and place candidates for permanent employment and temporary staffing at and/or on behalf of CIS's clients.

28.     "Permanent placement" refers to the business of locating and recruiting qualified

candidates to fill vacancies for permanent employment at CIS's clients. Clients generally paid CIS a one-time permanent placement fee once a candidate had been successfully placed for employment at such client.

29.     "Temporary staffing" refers to the business of locating and recruiting temporary employees or consultants who, although assigned to work at or on behalf of CIS's client, remained employed or engaged by or on the payroll of CIS. Temporary staffing clients generally paid CIS periodic temporary staffing fees based upon the amount of hours that CIS's temporary employees or consultants performed work at or on behalf of CIS's clients.

30.     As set forth in greater detail below, each of the Plaintiffs herein would earn and be paid certain commissions based upon the permanent placement and/or temporary staffing fees received by CIS attributable to such Plaintiff's recruiting or sales work.

31.     Except as otherwise set forth herein, none of the Plaintiffs entered into a written agreement with CIS or the other Defendants governing the payment of commissions now sought by this action, in violation of NYLL § 191(1)(c). To the contrary, except as otherwise set forth herein, each Plaintiff had a verbal agreement or understanding with the Defendants in connection with the earned commissions that the Plaintiffs are now seeking to recover.

32.     The Plaintiffs at all times fully performed under terms of their respective agreements or understandings with the Defendants, including (without limitation) by successfully performing recruiting and sales services.

33.     For each successful permanent placement for which a Plaintiff was either the responsible recruiter (*i.e.*, responsible to recruit the candidate) or the responsible salesperson (*i.e.*, responsible to obtain business or job orders from the client), that Plaintiff would earn a commission equal to an agreed-to fixed percentage of the gross placement fee paid to CIS from

its client.

34.     The fixed percentage (set forth below with particularity) would generally be shared and reduced by half (*i.e.*, "split") in the event another CIS employee was either the responsible recruiter or the responsible salesperson.

35.     The Defendants and the Plaintiffs agreed and understood that commissions on permanent placements were payable to the Plaintiffs at such time as the permanent placement fee was received by CIS and any guarantee period associated with that placement, if any, had expired. The "guarantee period" is the period during which CIS remains obligated to replace the candidate or refund the placement fee in the event the candidate or the client terminates the candidate's employment with the client.

36.     For successful temporary staffing placements for which a Plaintiff was either the responsible recruiter or the responsible salesperson, that Plaintiff would earn a commission equal to an agreed-to fixed percentage of the billing "spread," *i.e.*, the difference between the temporary staffing fees paid to CIS from its client and compensation paid by CIS to its temporary employees or consultants working at such client. For the purposes of calculating the "spread," any temporary staffing fees received from the client were reduced by a "burden" of 9.5%. Moreover, for the purposes of calculating the "spread," if the temporary employee or consultant was a W-2 employee then the employee's compensation was increased by an additional "burden" of 17.5%.

37.     The Defendants and the Plaintiffs agreed that commissions on temporary staffing fees were payable to the Plaintiffs at such time as the temporary staffing fees were received by CIS.

38.     The Defendants had a policy and practice of paying earned commissions to

departed employees, including, without limitation: (a) commissions on permanent placements made or confirmed during such employee's employment where the client fees were received by CIS after the termination of such employment; (b) commissions on permanent placements made or confirmed after such employee's employment where the placement was in progress at the time of termination (*e.g.*, the candidate had already been referred to the client for consideration); and (c) commissions on temporary staffing fees received by CIS for the three (3) months immediately subsequent to the employee's termination of employment for any reason.

39.    Notwithstanding the Defendants' failure to enter into written agreements setting forth the terms and conditions of the foregoing commissions structure, upon information and belief, the Defendants are in possession or control of written commissions calculations, reconciliations, payroll records, and other written records or statements reflecting the agreements and understandings between the Plaintiffs and the Defendants.

40.    Except as otherwise set forth herein, at all relevant times each Plaintiff was solely paid earned commissions on permanent placements and temporary staffing, and Plaintiffs did not receive any salary, draw, or other wages from the Defendants.

41.    As set forth below, Defendants failed to pay each Plaintiff overtime compensation for work in excess of 40 hours in a given workweek in violation of the FLSA and NYLL.

42.    As set forth below, Defendants failed to pay certain Plaintiffs the legally required minimum wage in violation of the FLSA and NYLL.

43.    As set forth below, Defendants failed to pay certain Plaintiffs the legally required spread-of-hours pay in violation of the NYLL.

44.    Defendants failed to provide each of the Plaintiffs proper wage rate notices upon hire and annually, in violation of NYLL § 195(1).

45.     Defendants failed to provide each of the Plaintiffs with proper wage statements with each payment of wages, in violation of NYLL § 195(3) and 12 N.Y.C.R.R. § 142-2.7.

46.     Upon information and belief, Defendants failed to maintain and preserve accurate and complete weekly payroll records for each Plaintiff, in violation of the FLSA, 29 C.F.R. § 516 *et seq.*, and the NYLL, §§ 195(4) and 661 and 12 N.Y.C.R.R. § 142-2.6.

**Allegations Specific to Plaintiff Matthew Belardinelli**

47.     Belardinelli became employed by CIS and the other Defendants in March 2006 and remained employed until May 30, 2014.

48.     Most recently Belardinelli had the title of Recruiter and he primarily worked with clients in the financial services industry, recruiting and placing underwriters, claims examiners, actuary analysts, and accountants, among other positions.

49.     During the course of his employment Belardinelli was responsible to, among other things, perform permanent placement services on behalf of CIS's clients.

50.     With respect to permanent placements, Belardinelli and the Defendants agreed that his commission rate would be equal to 50% of the gross fee received by CIS, or 25% of the gross fee if the commission was split with another CIS employee.

51.     In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Belardinelli by failing to pay him earned wages (commissions) on permanent placements. Upon information and belief, Belardinelli earned and is owed at least $22,093.30 in commissions based upon permanent placements.

52.     Upon information and belief, the Defendants are in possession of written records reflecting permanent placement fees received by CIS from its clients and other information necessary for Belardinelli to ascertain and calculate the commissions earned by him on those

fees.

53.     In May 2014 Arthur Abrams expressly admitted to Belardinelli that the Defendants owe him earned and unpaid commissions.

54.     In addition to the Defendants' failure to pay Belardinelli earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay Belardinelli statutory minimum wage, overtime compensation, and spread-of-hours pay.

55.     During the course of his employment with Defendants, Belardinelli worked at least 60 hours per week. During a workday Belardinelli would perform 20 to 45 minutes of work prior to arriving at Defendants' office, 8 hours of work at Defendants' office, and 3 to 4 hours of work from his home or outside the office. Moreover, Belardinelli worked 3 to 4 hours during the weekend. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Belardinelli overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

56.     Except for his first 6 months, during the course of his employment with Defendants, Belardinelli's wages consisted solely of earned commissions, even though Belardinelli worked entire weeks (and even entire months) during which no commissions were earned or paid. During one period of work in 2011 Belardinelli received no pay whatsoever for nearly a year. Defendants failed to pay Belardinelli the statutory minimum wage in violation of the FLSA and NYLL.

57.     During the course of his employment with Defendants, on 5 days per week Belardinelli worked a spread-of-hours in excess of 10. Defendants failed to pay Belardinelli spread-of-hours pay as required by the NYLL.

58.     Upon information and belief, the Defendants are in possession of written records

reflecting Belardinelli's wages and/or hours of work in order to ascertain and calculate minimum wages, overtime compensation, and spread-of-hours pay due to him.

59.     The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Belardinelli's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Norman Dymbort**

60.     Dymbort became employed by CIS and the other Defendants in January 2002 and remained employed until May 30, 2014.

61.     During the course of his employment for the Defendants the Defendants wrongfully and knowingly misclassified Dymbort as an "independent contractor," notwithstanding that at all relevant times Dymbort performed his services solely for CIS (and not any other entities) and that the Defendants had complete direction and control over the terms and conditions of Dymbort's employment. Dymbort also did not operate his own independently established business.

62.     Most recently Dymbort had the title of Executive Recruiter and he primarily worked with clients in the financial services industry, recruiting and placing software engineers and quantitative developers, among other positions.

63.     During the course of his employment Dymbort was responsible to, among other things, perform permanent placement and temporary staffing services on behalf of CIS's clients.

64.     With respect to permanent placement, Dymbort and the Defendants agreed that his commission rate would be equal to 60% of the gross fee received by CIS, or 30% of the gross fee if the commission was split with another CIS employee.

65.     With respect to temporary staffing, Dymbort and the Defendants agreed that his commission rate would be equal to 60% of the "spread," or 30% of the "spread" if the commission was split with another CIS employee, subject to the applicable "burdens."

66.     In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Dymbort by failing to pay him earned wages (commissions) on permanent and temporary staffing placements. Upon information and belief, Dymbort earned and is owed at least $32,777.67 in commissions based upon permanent placements and temporary staffing.

67.     Upon information and belief, the Defendants are in possession of written records reflecting permanent placement and temporary staffing fees received by CIS from its clients and other information necessary for Dymbort to ascertain and calculate commissions earned by him on those fees.

68.     In May 2014 Arthur Abrams expressly admitted to Dymbort that the Defendants owe him earned and unpaid commissions.

69.     In addition to the Defendants' failure to pay Dymbort earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay Dymbort overtime compensation.

70.     During the course of his employment with Defendants, Dymbort worked at least 50 hours per week. During workdays on Monday through Thursday Dymbort performed 7 hours of work at Defendants' office and 3 hours of work from his home. On Fridays Dymbort performed 4-6 hours of work from his home or outside the office. Moreover, Dymbort worked 4 hours during the weekend. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Dymbort overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

71.     Upon information and belief, the Defendants are in possession of written records reflecting Dymbort's wages and/or hours of work in order to ascertain and calculate overtime compensation due to him.

72.     The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Dymbort's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Amy Berwald Gaspari**

73.     Gaspari became employed by CIS and the other Defendants in September 1997 and remained employed until May 30, 2014.

74.     Most recently Gaspari had the nominal title of Vice President and she primarily worked with clients in the financial services industry, recruiting and placing software engineers, and high level technologists, and professional staff, among other positions.

75.     During the course of her employment Gaspari was responsible to, among other things, perform permanent placement and temporary staffing services on behalf of CIS's clients.

76.     With respect to permanent placement, Gaspari and the Defendants agreed that her commission rate would be equal to 60% of the gross fee received by CIS, or 30% of the gross fee if the commission was split with another CIS employee.

77.     With respect to temporary staffing, Gaspari and the Defendants agreed that her commission rate would be equal to 60% of the "spread," or 30% of the "spread" if the commission was split with another CIS employee, subject to the applicable "burdens."

78.     In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Gaspari by failing to pay her earned wages (commissions) on permanent and temporary staffing placements. Upon information and belief, Gaspari earned and is owed at least

$37,000 in commissions based upon permanent placements and temporary staffing.

79.     Upon information and belief, the Defendants are in possession of written records reflecting permanent placement and temporary staffing fees received by CIS from its clients and other information necessary for Gaspari to ascertain and calculate commissions earned by her on those fees.

80.     In May 2014 Arthur Abrams expressly admitted to Gaspari that the Defendants owe her earned and unpaid commissions.

81.     In addition to the Defendants' failure to pay Gaspari earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay to Gaspari statutory minimum wage, overtime compensation, and spread-of-hours pay.

82.     During the course of her employment with Defendants, Gaspari worked at least 60 hours per week. During a workday Gaspari would perform 20 to 45 minutes of work prior to arriving at Defendants' office, 9 hours of work at Defendants' office, and 1 to 3 hours of work from her home or outside the office. Moreover, Gaspari worked 3 to 4 hours during the weekend. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Gaspari overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

83.     Since 1998 during the course of her employment with Defendants, Gaspari's wages consisted solely of earned commissions, even though Gaspari worked entire weeks (approximately 15% of weeks worked) during which no commissions were earned or paid. Defendants failed to pay Gaspari the statutory minimum wage in violation of the FLSA and NYLL.

84.     During the course of her employment with Defendants, on 3 days per week

Gaspari worked a spread-of-hours in excess of 10. Defendants failed to pay Gaspari spread-of-hours pay as required by the NYLL.

85.     Upon information and belief, the Defendants are in possession of written records reflecting Gaspari's wages and/or hours of work in order to ascertain and calculate minimum wages, overtime compensation, and spread-of-hours pay due to her.

86.     The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Gaspari's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Jeanine Fenton**

87.     Fenton became employed by CIS and the other Defendants in December 2013 and remained employed until May 30, 2014.

88.     Most recently Fenton had the title of Recruiter and she primarily worked with clients in the financial services and insurance industries, recruiting human resources managers and software developers, among other positions.

89.     During the course of her employment Fenton was responsible to, among other things, perform permanent placement services on behalf of CIS's clients.

90.     Fenton received a salary at the rate of $26,000 per annum.

91.     With respect to permanent placements, Fenton and the Defendants agreed that her commission rate would be equal to 10% of the gross fee received by CIS, or 5% of the gross fee if the commission was split with another CIS employee.

92.     In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Fenton by failing to pay her earned wages (commissions) on permanent placements. Upon information and belief, Fenton earned and is owed at least $1,550 in

commissions based upon permanent placements.

93.     Upon information and belief, the Defendants are in possession of written records reflecting permanent placement fees received by CIS from its clients and other information necessary for Fenton to ascertain and calculate commissions earned by her on those fees.

94.     In May 2014 Arthur Abrams expressly admitted to Fenton that the Defendants owe her earned and unpaid commissions.

95.     In addition to the Defendants' failure to pay Fenton earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay Fenton overtime compensation.

96.     During the course of her employment with Defendants, Fenton worked at least 45 hours per week. During a workday Fenton would perform 8 hours of work at Defendants' office, and 1 hour of work from her home or outside the office. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Fenton overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

97.     Upon information and belief, the Defendants are in possession of written records reflecting Fenton's wages and/or hours of work in order to ascertain and calculate overtime compensation due to her.

98.     The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Fenton's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Arthur Krakowski**

99.     Krakowski became employed by CIS and the other Defendants in February 1992 and remained employed until May 30, 2014.

100.   Most recently Krakowski had the nominal title of Senior Vice President and he primarily worked with clients in the financial services and technology industries, recruiting and placing programmers, software engineers, web developers, and quantitative analysts, among other positions.

101.   During the course of his employment Krakowski was responsible to, among other things, perform permanent placement and temporary staffing services on behalf of CIS's clients.

102.   With respect to permanent placements, Krakowski and the Defendants agreed that his commission rate would be equal to 60% of the gross fee received by CIS, or 30% of the gross fee if the commission was split with another CIS employee.

103.   With respect to temporary staffing, Krakowski and the Defendants agreed that his commission rate would be equal to 60% of the "spread," or 30% of the "spread" if the commission was split with another CIS employee, subject to the applicable "burdens."

104.   In the event CIS collected more than $150,000 in total client fees in a given calendar year attributable to Krakowski's permanent placements and temporary staffing, Krakowski's commission rate and split-commission rate would increase to 65% and 32.5%, respectively.

105.   In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Krakowski by failing to pay him earned wages (commissions) on permanent placements and temporary staffing. Upon information and belief, Krakowski earned and is owed at least $3,000 in commissions based upon permanent placements and temporary staffing.

106.   Upon information and belief, the Defendants are in possession of written records reflecting permanent placement and temporary staffing fees received by CIS from its clients and other information necessary for Krakowski to ascertain and calculate commissions earned by him

on those fees.

107.    In May 2014 Arthur Abrams expressly admitted to Krakowski that the Defendants owe him certain earned and unpaid commissions.

108.    In addition to the Defendants' failure to pay Krakowski earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay Krakowski statutory minimum wage, overtime compensation, and spread-of-hours pay.

109.    During the course of his employment with Defendants, Krakowski worked at least 50 hours per week. During a workday Krakowski would perform 8 to 9 hours of work at Defendants' office, and 1 to 2 hours of work while commuting or from his home or outside the office. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Krakowski overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

110.    During the course of his employment with Defendants, Krakowski's wages consisted solely of earned commissions, even though Krakowski worked entire weeks during which no commissions were earned or paid. This typically occurred 10-15 weeks per year. Defendants failed to pay Krakowski the statutory minimum wage in violation of the FLSA and NYLL.

111.    During the course of his employment with Defendants, on 3 days per week Krakowski worked a spread-of-hours in excess of 10. Defendants failed to pay Krakowski spread-of-hours pay as required by the NYLL.

112.    Upon information and belief, the Defendants are in possession of written records reflecting Krakowski's wages and/or hours of work in order to ascertain and calculate minimum wages, overtime compensation, and spread-of-hours pay due to him.

113.    The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Krakowski's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Leslie Linsner**

114.    Linsner became employed by CIS and the other Defendants in the fall 2011 and remained employed until June 2013.

115.    During the course of her employment for the Defendants the Defendants wrongfully and knowingly misclassified Linsner as an "independent contractor," notwithstanding that Linsner performed her services solely for CIS (and not any other entities) and the Defendants had complete direction and control over the terms and conditions of Linsner's employment. Linsner also did not operate her own independently established business.

116.    Most recently Linsner had the title of Talent Acquisition Director and she primarily worked with clients in the technology industry, recruiting and placing computer engineers and human resources directors or managers, among other positions.

117.    During the course of her employment Linsner was responsible to, among other things, perform temporary staffing services on behalf of CIS's clients.

118.    With respect to temporary staffing, Linsner and the Defendants agreed that her commission rate would be equal to 55% of the "spread," or 27.5% of the "spread" if the commission was split with another CIS employee.

119.    In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Linsner by failing to pay her various earned wages (commissions) on temporary staffing. Upon information and belief, Linsner earned and is owed at least $7,005 in commissions based upon temporary staffing.

120.    Upon information and belief, the Defendants are in possession of written records reflecting temporary staffing fees received by CIS from its clients and other information necessary for Linsner to ascertain and calculate commissions earned by her on those fees.

121.    In June 2013 one or more CIS officers expressly admitted to Linsner that the Defendants owe her earned and unpaid commissions.

122.    In addition to the Defendants' failure to pay Linsner earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay Linsner statutory minimum wage, overtime compensation, and spread-of-hours pay.

123.    During the course of her employment with Defendants, Linsner worked at least 60 hours per week. During a workday Linsner would perform 30 to 45 minutes of work prior to arriving at Defendants' office, 9 hours of work at Defendants' office, and 2 to 3 hours of work from her home or outside the office. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Linsner overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

124.    Although Linsner received an expense-reimbursement stipend of $800 per month on a 1099 basis, Linsner's wages consisted solely of earned commissions, even though Linsner worked entire weeks (and even entire months) during which no commissions were paid. During the first 52 weeks of her employment Linsner received no wages whatsoever. Defendants failed to pay Linsner the statutory minimum wage in violation of the FLSA and NYLL.

125.    During the course of her employment with Defendants, on 5 days per week Linsner worked a spread-of-hours in excess of 10. Defendants failed to pay Linsner spread-of-hours pay as required by the NYLL.

126.    Upon information and belief, the Defendants are in possession of written records

reflecting Linsner's wages and/or hours of work in order to ascertain and calculate minimum wages, overtime compensation, and spread-of-hours pay due to her.

127.    The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Linsner's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Charese McNeill**

128.    McNeill became employed by CIS and the other Defendants in September 2013 and remained employed until May 30, 2014.

129.    Most recently McNeill had the title of Technical Recruiter and she primarily worked with clients in the technology industry, recruiting and placing java developers, middleware engineers, and front end developers, among other positions.

130.    During the course of her employment McNeill was responsible to, among other things, perform permanent placement and temporary staffing services on behalf of CIS's clients.

131.    With respect to permanent placements, McNeill and the Defendants agreed that her commission rate would be equal to 25% of the gross fee received by CIS, or 12.5% of the gross fee if the commission was split with another CIS employee.

132.    Upon information and belief, in the event CIS collected more than $75,000 in total client fees in a given calendar year attributable to McNeill's permanent and temporary staffing placements, McNeill's commission rate and split-commission rate would increase to 30% and 15%, respectively. In the event CIS collected more than $125,000 in total client fees in a given calendar year attributable to McNeill's permanent and temporary staffing placements, McNeill's commission rate and split-commission rate would further increase to 35% and 17.5%, respectively.

133.    In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with McNeill by failing to pay her earned wages (commissions) on permanent placements. Upon information and belief, McNeill earned and is owed at least $3,300 in commissions based upon permanent placements.

134.    Upon information and belief, the Defendants are in possession of written records reflecting permanent placement fees received by CIS from its clients and other information necessary for McNeill to ascertain and calculate commissions earned by her on those fees.

135.    In May 2014 Arthur Abrams expressly admitted to McNeill that the Defendants owe her earned and unpaid commissions.

136.    In addition to the Defendants' failure to pay McNeill earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay McNeill statutory minimum wage, overtime compensation, and spread-of-hours pay.

137.    During the course of her employment with Defendants, McNeill worked at least 60 hours per week. During a workday McNeill would perform 8 hours of work at Defendants' office, and 4 hours of work from her home or outside the office. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay McNeill overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and NYLL.

138.    Although McNeill received an expense-reimbursement stipend of $600 bi-weekly on a 1099 basis, during the course of her employment with Defendants McNeill was not paid any wages at any time whatsoever. Defendants failed to pay McNeill the statutory minimum wage in violation of the FLSA and NYLL.

139.    During the course of her employment with Defendants, on 5 days per week

McNeill worked a spread-of-hours in excess of 10. Defendants failed to pay McNeill spread-of-hours pay as required by the NYLL.

140.    Upon information and belief, the Defendants are in possession of written records reflecting McNeill's wages and/or hours of work in order to ascertain and calculate minimum wages, overtime compensation, and spread-of-hours pay due to her.

141.    The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to McNeill's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

**Allegations Specific to Plaintiff Steven Spector**

142.    Spector became employed by CIS and the other Defendants in January 2009 and remained employed until May 30, 2014.

143.    Most recently Spector had the title of Senior Recruiter and he primarily worked with clients in the financial services industry, recruiting and placing software engineers and quantitative developers, among other positions.

144.    During the course of his employment Spector was responsible to, among other things, perform permanent placement and temporary staffing services on behalf of CIS's clients.

145.    Commencing in January 2010, Spector was paid a draw against commissions of $4,000 per month, which increased to $5,000 per month on or about January 2012 and to $6,000 per month on or about January 2014.

146.    With respect to permanent placements, Spector and the Defendants agreed that his commission rate would be equal to 55% of the gross fee received by CIS, or 25% of the gross fee if the commission was split with another CIS employee.

147.    With respect to temporary staffing placements, Spector and the Defendants agreed

that his commission rate would be equal to 55% of the "spread," or 25% of the "spread" if the commission was split with another CIS employee, subject to the applicable "burdens."

148.    In the event CIS collected more than $200,000 in total client fees in a given calendar year attributable to Spector's permanent placements and temporary staffing, Spector's commission rate and split-commission rate would increase to 55% and 27.5%, respectively.

149.    In violation of the NYLL, Article 6, the Defendants have wilfully breached their agreement with Spector by failing to pay him earned wages (commissions) on permanent placements and temporary staffing. Upon information and belief, Spector earned and is owed at least $36,727.88 in commissions based upon permanent placements and temporary staffing.

150.    Upon information and belief, the Defendants are in possession of written records reflecting permanent placement and temporary staffing fees received by CIS from its clients and other information necessary for Spector to ascertain and calculate commissions earned by him on those fees.

151.    In May 2014 Arthur Abrams expressly admitted to Spector that the Defendants owe him earned and unpaid commissions.

152.    In addition to the Defendants' failure to pay Spector earned commissions as set forth above, the Defendants have violated the FLSA and NYLL by failing to pay Spector overtime compensation.

153.    During the course of his employment with Defendants, Spector worked at least 50 hours per week. During a workday Spector would perform 8 hours of work at Defendants' office, and 2 hours of work from his home or outside the office. Such work included, without limitation, checking, sending, drafting, and responding to e-mails. Defendants failed to pay Spector overtime compensation for hours worked over 40 in a workweek in violation of the FLSA and

NYLL.

154.    Upon information and belief, the Defendants are in possession of written records reflecting Spector's wages and/or hours of work in order to ascertain and calculate overtime compensation due to him.

155.    The unlawful acts described herein were willfully, recklessly, and/or maliciously committed by the Defendants and/or its agents or supervisors, and without regard to Spector's statutory rights. Moreover, Defendants knew or should have known of such unlawful conduct.

## FIRST CAUSE OF ACTION

### (Failure to Pay Minimum Wages under the FLSA)

156.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

157.    The Defendants were at all times required to pay Plaintiffs the applicable FLSA minimum wage during the course of their employment for the Defendants.

158.    The Defendants failed to pay Plaintiffs the minimum wages to which they are entitled under the FLSA, 29 U.S.C. § 206 *et seq.*, including, without limitation, weeks or months of employment for which the Plaintiffs received no compensation whatsoever.

159.    As a result of Defendants' violations of the FLSA, Plaintiffs have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA, 29 U.S.C. § 216 *et seq.*

160.    Defendants' conduct, as described in this Complaint, has been intentional and willful.

161.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

162.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

## SECOND CAUSE OF ACTION

### (Failure to Pay Minimum Wages under the NYLL)

163.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

164.    Defendants were at all times required to pay Plaintiffs the applicable NYLL minimum wage during the course of their employment for the Defendants.

165.    Defendants failed to pay Plaintiffs the minimum wages to which they are entitled under the NYLL and its supporting regulations, including, without limitation, weeks of employment for which the Plaintiffs received no compensation whatsoever.

166.    By Defendants' knowing or intentional failure to pay Plaintiffs minimum hourly wages, they have willfully violated NYLL Article 19, §§ 650, *et seq.* and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. § 142-2.1.

167.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid wages in an amount to be determined at trial, reasonable attorneys' fees, costs, liquidated damages as provided for by the NYLL, including, without limitation, Article 6, § 198, and pre-judgment and postjudgment interest.

168.    Defendants' conduct, as described in this Complaint, has been intentional and willful.

169.   Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

170.   Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

## THIRD CAUSE OF ACTION

### (Failure to Pay Overtime Compensation Under the FLSA)

171.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

172.   Defendants failed to pay Plaintiffs overtime compensation for hours that they worked in excess of 40 hours in each workweek in violation of the FLSA, 29 U.S.C. § 207 *et seq*.

173.   As a result of Defendants' unlawful acts, Plaintiffs have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, interest, and other compensation pursuant to the FLSA, 29 U.S.C. § 216(b).

174.   Defendants conduct, as described in this Complaint, has been intentional and willful.

175.   Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

176.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

## FOURTH CAUSE OF ACTION

### (Failure to Pay Overtime Compensation Under the NYLL)

177.   Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

178.    Defendants have failed to pay Plaintiffs the overtime to which they are entitled under the NYLL and the supporting New York State Department of Labor regulations.

179.    By Defendants' knowing or intentional failure to pay Plaintiffs overtime for hours worked in excess of 40 per week, they have willfully violated the NYLL Article 19, § 650 *et seq.*

180.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation in an amount to be determined at trial, reasonable attorneys' fees, costs, liquidated damages as provided for by NYLL, including, without limitation, Article 6, § 198, and pre-judgment and postjudgment interest.

181.    Defendants' conduct, as described in this Complaint, has been intentional and willful.

182.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

183.    Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

## FIFTH CAUSE OF ACTION

### (Failure to Pay Earned Wages Under the NYLL)

184.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

185.    Defendants violated their agreements and understandings with the Plaintiffs and failed to pay Plaintiffs the full amount of commissions earned by the Plaintiffs.

186.    Through their knowing and intentional failure to pay Plaintiffs the full commissions they had earned, Defendants willfully violated the NYLL, Article 6, §§ 190, *et seq.*,

and the supporting New York State Department of Labor Regulations.

187.   Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid commissions in an amount to be determined at trial, liquidated damages as provided for by the NYLL, Article 6 § 198, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

188.   Defendants' conduct, as described in this Complaint, has been intentional and willful.

189.   Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

190.   Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

**SIXTH CAUSE OF ACTION**

**(Spread-of-Hours Pay under the NYLL)**

191.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

192.   The NYLL requires employers to pay an extra hour's pay for each day that an employee ends work more than ten hours after that employee began work ("spread-of-hours pay"). 12 N.Y.C.R.R. § 142-2.4.

193.   Defendants failed to pay Plaintiffs an additional hour's pay at the basic minimum hourly wage rate for each day that they worked a spread of hours that exceeded ten hours or a shift in excess of ten hours.

194.   Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid spread of hours wages in an amount to be determined at trial, liquidated

damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

195.    Defendants' conduct, as described in this Complaint, has been intentional and willful and not in good faith.

196.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

197.    Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

<u>**SEVENTH CAUSE OF ACTION**</u>

**(Failure to Provide Wage Notices under the NYLL)**

198.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

199.    Defendants have willfully failed to supply Plaintiffs with accurate wage notices, as required by NYLL, Article 6, § 195(1), containing Plaintiffs' rate or rates of pay and the basis thereof, and overtime rate or rates of pay.

200.    Defendants' unlawful conduct as described in this Complaint has been willful.

201.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

202.    Due to Defendants' willful violations of the NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide them with wage notices, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198.

## EIGHTH CAUSE OF ACTION

### (Failure to Provide Wage Statements under the NYLL)

203.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

204.    Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the regular rate or rates of pay and the basis thereof, overtime rate or rates of pay, and the number of hours worked, including overtime hours.

205.    Defendants' unlawful conduct, as described in this Complaint, has been willful.

206.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

207.    Due to Defendants' willful violations of the NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide each of them with accurate wage statements, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198.

## NINTH CAUSE OF ACTION

### (Failure to Enter into Written Commission Agreements under the NYLL)

208.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

209.    The Defendants willfully violated the NYLL, Article 6, § 19l(l)(c), by failing to reduce to writing the agreed terms of employment between Defendants and each of the Plaintiffs,

and failing to furnish Plaintiffs with accurate statements of earnings.

## TENTH CAUSE OF ACTION

### (Failure to Retain Wage and Hour Records under the FLSA)

210.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

211.    Defendants failed to make, keep and preserve accurate records with respect to Plaintiffs, including hours worked each workday and total hours worked each workweek, as required by the FLSA, 29 U.S.C. § 211(c), and supporting federal regulations.

## ELEVENTH CAUSE OF ACTION

### (Failure to Retain Wage and Hour Records under the NYLL)

212.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

213.    Defendants willfully failed to retain accurate and complete weekly payroll records for each Plaintiff, in violation of the NYLL, §§ 195(4) and 661 and 12 N.Y.C.R.R. § 142-2.6.

## TWELFTH CAUSE OF ACTION

### (Breach of Contract)

214.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

215.    Each Plaintiff entered into and fully performed under the terms of their respective commission agreements with the Defendants.

216.    The Defendants have failed to pay each Plaintiff commissions earned in accordance with, and breached, the respective commission agreements, causing damages to the Plaintiffs.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seek the following relief:

A.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA and NYLL and violate the Defendants' respective agreement with the Plaintiffs;

B.      An injunction requiring Defendants to pay all statutory-required wages pursuant to the FLSA and NYLL;

C.      Unpaid minimum wages and overtime compensation and an additional and equal amount as liquidated damages under the FLSA;

D.      Unpaid earned wages, minimum wages, spread of hours pay, overtime compensation, and liquidated damages under the NYLL;

F.      Statutory notice and wage statement payments penalties pursuant to the NYLL;

G.      Other appropriate statutory penalties;

H.      Pre- and post-judgment interest as authorized by statute;

I.      Attorneys' fees and costs of this action as authorized by statute; and

K.      Such other relief as this Court shall deem just and proper.

Dated:     New York, New York
               June 22, 2015

TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP

By: _____

     Joel A. Klarreich
     Jason B. Klimpl
900 Third Avenue
New York, New York 10022
(212) 508-6700 (phone)
(212) 371-1084 (fax)
*Attorneys for Plaintiffs*